AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The person of Dimitris Smith located at the Lackawanna<br>County Prison, 1371 N. Washington Avenue, Scranton,<br>Pennsylvania 18509 | )<br>)<br>)<br>)<br>)<br>)   Case No. 3:24-MC- 0487 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The warrant is for DNA from inside the mouh of Dimitris Smith, date of birth, May 26, 1978, who is currently incacerated at the Lackawanna County Prison.

located in the _____ Middle _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The warrant is for DNA from inside the mouh of Dimitris Smith, date of birth, May 26, 1978, who is currently incacerated at the Lackawanna County Prison.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C 841 (a)(1) | Distribution of Controlled Substance |
| 21 U.S.C 841 (a)(1) | Distribution of Controlled Substance Resulting in Death |

The application is based on these facts:

I, Daniel J. Spath, being duly sworn, do hereby depose and state:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Daniel J Spath, FBI Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____
*(specify reliable electronic means).*

Date: JUNE 4, 2024

*Judge's signature*

City and state:  Harrisburg, PA

Daryl F. Bloom, U.S. Magistrate Judge

*Printed name and title*

# CONTINUATION SHEETS

## INTRODUCTION AND AGENT BACKGROUND

1.     I have been a Task Force Officer with the Federal Bureau of Investigation since July 2022. I am currently a member of the Safe Streets Task Force, Scranton Resident Agency, Scranton, PA investigating violations of Title 18 and 21 of the United States Code and therefore I am also a "law enforcement officer" within the meaning of 18 U.S.C.§ 2510(7).

2.     I am a member of the Pennsylvania State Police with the rank of Trooper since April 1, 2011. In addition to my assignment as Federal Bureau of Investigation Task Force Officer I am currently assigned to the Troop N, Vice/Narcotics Unit, located at 250 Dessen Drive, West Hazleton, Pennsylvania, 18202. I have received training in Drug Law Enforcement and Criminal Investigation from the Pennsylvania State Police and have attended numerous training courses associated with illegal narcotics, drug trafficking, drug interdiction, and the observable effects of drugs on the human body including, but not limited to:  Top Gun Undercover Drug Law Enforcement Training, Operation SHIELD or the Safe Highways Initiative through Effective Law Enforcement and

Detection training, Vehicle Search and Seizure, Hotel/Motel and Parcel

Interdiction, and Drug Recognition Expert School. I have been involved

in hundreds of investigations of various types of criminal activity,

including Homicides, Assaults, Rapes, Robberies, Thefts, Narcotics

Trafficking offenses and Firearm related offenses.  I have worked with

numerous members of the Federal Bureau of Investigation, Drug

Enforcement Administration, Homeland Security Investigations, and

state and local partners, applying for and receiving numerous search

and arrest warrants. I have participated in the investigation of multiple

co-defendant drug cases resulting in multiple convictions in State and

Federal court and the forfeiture of assets.

3.      My duties include the undercover purchases of controlled

substances, the use of informants, the surveillance of drug law

violators, and the interviewing and debriefing of drug law violators.  As

a result of my training, experience and detailed conversations with

informants, sources of information, narcotics traffickers, drug dealers

and drug users, as well operating in an undercover capacity, I am

familiar with the clandestine manner in which drugs are manufactured,

transported, packaged, sold, smuggled, used as well as familiar with the

cryptic terms and code language utilized by those who traffic, distribute and possess illegal drugs. Additionally, I am also familiar with the prices for which drugs are sold and the terms associated with drugs and drug use.

4.      As the lead investigative Task Force Officer for this case in the Middle District of Pennsylvania, I am thoroughly familiar with the information contained in this affidavit, either through personal investigation or through discussions with other officers and agents who have conducted interviews, or who have themselves obtained information, which they in turn have reported to me. Among other things, I have received written and oral reports from law enforcement officers in multiple jurisdictions who are participating in the investigation.

5.      On multiple occasions, I have participated in searches, authorized by consent, search warrants, and other legal grounds, of residences, commercial premises, vehicles, cellular telephones, phone records, social media and other areas to find evidence of criminal activity, to include narcotics trafficking. In the course of such searches, I have reviewed and inspected documents evidencing drugs and the distribution of

3

drugs, telephone numbers and addresses, and telephone subscription
and toll records maintained for telephones used to facilitate drug
trafficking, packaging and weighing equipment and materials used to
prepare and package drugs for re-distribution, and electronic storage
and computing devices like desk-top and lap-top computers and cellular
telephones, used to communicate and store information related to drug
trafficking activities.  In the process of conducting searches and
reviewing items seized during the searches, I have become familiar with
the materials and equipment used by drug traffickers to package and
weigh drugs and to communicate about drug transactions and related
activities.

6.     Through my training and experience, I have learned that drug
traffickers often use multiple cellular telephones to communicate with
others regarding drug activity.  It is common for people trafficking
drugs to have multiple cellular telephones and for one or more of those
cellular telephones phones to be tracked by GPS or other means.  These
phones often contain information that shows travel origins and
destinations, information regarding user name/account associated with

4

digital payment platforms, contact information for others involved in the criminal activity and types and amounts of drugs being trafficked.

7.     I make this statement in support of an application for a search warrant authorizing the collection of a Deoxyribonucleic Acid ("DNA") sample of a target of this investigation: Dimitris SMITH Jr, in order to perform comparative DNA analysis with physical evidence collected by the Pennsylvania State Police during an investigation conducted into the death of Samantha Pennell which occurred on December 11th, 2023.

8.     The facts in this statement are based in part on my investigation of this matter and on information provided by other law enforcement officers. Because this is being submitted for the limited purpose of potentially identifying incriminating content relevant to the investigation, I have not included each and every fact known to me concerning this investigation.  This is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.     Based on the facts set forth herein, there is probable cause that evidence, fruits, and instrumentalities of a violation of 21 U.S.C 841 (a)(1) Distribution of a Controlled Substance and 21 U.S.C 841(a)(1)

5

Distribution of a Controlled Substance Resulting in Death, are located within Dimitris SMITH's DNA.

## JURISDICTION

10.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.     I, along with other Federal Bureau of Investigation Task Force Officers, and other members of law enforcement within the Commonwealth of Pennsylvania, began to assist Pennsylvania State Police (PSP), Stroudsburg Station, Criminal Investigation Unit (CIU) Trooper (TPR) James Poliskiewicz with the investigation into Drug Delivery Resulting in Death of Samantha Pennell.

12.     During TPR Poliskiewicz's investigation it was discovered that on December 11, 2023, PSP Stroudsburg Patrol Unit members TPR Salvatore Corma and TPR Tara Roden along with EMS responded to a

dispatch involving the report of a thirty eight year old female who was
not breathing.  Upon arrival on scene responding Troopers located
Pennell unresponsive. Pennell's family initially administered Naloxone
to Pennell without effect. Upon arrival on scene Trooper Corma
administered Naloxone to Pennell without effect. Troopers then began
to administer CPR to Pennell. EMS arrived on scene and took over life
saving measures to no avail. All life saving measures were eventually
terminated. PSP Stroudsburg CIU TPR Poliskiewicz and the Monroe
County Coroner's Office were summoned to the scene.

13.    TPR Poliskiewicz related he was dispatched to the location. While
enroute Pennell's boyfriend, James McGuire, related to TPR Corma
that the individual who had supplied Pennell with fentanyl on that day
was known by the street name "Schmitty" and would be listed in
Pennell's cellular telephone as "Schitz".

14.    TPR Poliskiewicz explained he arrived on scene and observed
Pennell to be deceased in the center of the bedroom on the floor
consistent with where she would have been placed by first responders to
properly administer life saving measures. While on scene, McGuire
informed TPR Poliskiewicz of the same information regarding

7

"Schmitty" as to being the dealer who supplied Pennell with fentanyl that day. TPR Poliskiewicz asked McGuire if Pennell would have communicated with "Schmitty" via telecommunication, McGuire related she would have and readily provided TPR Poliskiewicz with a Pennell's cellular telephone which was a Black in color Samsung cellular telephone. McGuire further indicated the phone was owned by and the bill paid for by Pennell's parents, identified as Billie Jo Lee and Arthur Lee III both of whom were at the scene. TPR Poliskiewicz then spoke with Billie Jo Lee and Arthur Lee and obtained verbal consent to seize and examine Pennell's cellular telephone. Arthur Lee III also provided written consent for the same.

15.    TPR Poliskiewicz related McGuire handed him a clear plastic bag containing a white powder and related to TPR Poliskiewicz that it was the remainder of the substance Pennell had purchased and smoked earlier in the evening. TPR Poliskiewicz further interviewed McGuire and he related that he had observed "Schmitty" at the residence that day meeting with Pennell.   McGuire related, "Schmitty" would package the narcotics by wrapping the bag they were contained within inside a blue latex style glove. McGuire related that on December 11, 2023, he

8

observed Pennell walk back into the residence after meeting with

"Schmitty" carrying a blue latex style glove. McGuire related Pennell

retrieved an item from within the glove which he explained to be a bag

of heroin/fentanyl. McGuire related he later observed Pennell smoke the

heroin/fentanyl. McGuire explained that Pennell had left the blue glove

on the mattress in their bedroom and McGuire later observed his

children playing with the blue glove. McGuire explained he got angry,

grabbed the glove and flung it behind a dresser. McGuire subsequently

pointed out the item to TPR Poliskiewicz who observed it to be pinned

behind the dresser in bedroom. McGuire also related that Pennell had

left the remainder of the substance on the dresser and that is where he

obtained it from when he handed it over to Troopers.

16.    It was subsequently determined that Samantha Pennell's cause of

death listed on the Certificate of Death was mixed drug toxicity,

toxicology report showing the presence of Fentanyl, Norfentanyl,

Xylazine and other substances.

17.    TPR Poliskiewicz related he photographed the scene and collected

evidence at the scene to include the blue latex style glove. TPR

Poliskiewicz related all evidence seized was entered into evidence at

PSP Stroudsburg.  TPR Poliskiewicz related he submitted Pennell's cellular telephone to PSP Computer Crimes Unit (CCU) to complete a forensic download on the device.  The forensic download was completed and TPR Poliskiewicz related he reviewed the content and found Pennell to have made previous Cash App payments to the account "Dee, kincks1921".  Furthermore, text communication was located on the cellular telephone between Pennell and cellular telephone number 570-426-8983 with a contact name "Olga Love Bug" from December 11, 2023, indicating that "Schmitty" had contacted Pennell moments earlier indicting he was back around. Further communication between Pennell and "Olga Love Bug" were reviewed and indicated that "Schmitty" did distribute controlled substances to Pennell on December 11, 2023.

18.    TPR Poliskiewicz related he submitted the seized blue latex style glove to the PSP Greensburg Laboratory, Forensic DNA Division, for DNA Analysis.

19.    TPR Poliskiewicz related he received a PSP Greensburg Laboratory, Forensic DNA Division laboratory report dated May 7, 2024, that documented a DNA profile consistent with a mixture of three (3) unidentified contributors was obtained from the swabs of the glove.

20.    TPR Poliskiewicz related he received a PSP Greensburg Laboratory, Forensic DNA Division laboratory report dated May 17, 2024, which documented a DNA profile obtained from the swabs of the glove was previously uploaded into Combined DNA Index System (CODIS) at the State (SDIS) and Nation (NDIS) levels. The report further documented as a result of a CODIS search an individual can not be eliminated as a possible investigative lead to the unidentified profile obtained from this item. The report listed the name: Dimitrius Smith, with the following identifiers State: New York, NYSID # 7917886K, FBI # 971081CB7, Sex: Male. The report related it is considered a preliminary report. In order to issue a final report for the comparison of the profile of SMITH to the questioned sample(s) a blood sample or a buccal collector from SMITH shall be submitted to the laboratory.

21.    I conducted a query of the criminal history of Dimitris SMITH DOB 05/26/1978 which yielded New York SID 7917886 and FBI # 971081CB7. The New York State criminal history response for SMITH indicated a DNA profile was on record. Furthermore, Smith's first name is listed as both "Dimitris" and "Dimitrius" in the NY State criminal history query response.

11

22.    In February of 2024, Trooper Zachary MUZZEY of the

Pennsylvania State Police, Troop N Vice/ Narcotics Unit began an

investigation into the drug trafficking of Dimitris SMITH Jr. and others

in the Stroud Township Area of Monroe County, Pennsylvania. Trooper

MUZZEY met with an Undercover Pennsylvania State Trooper, herein

referred to as "UT", who began communicating with SMITH to obtain

quantities of controlled substances from him. The UT is also a Federal

Bureau of Investigation Task Force Officer assigned to the Safe Streets

Task Force.

23.    The first purchase made by the UT occurred on March 14, 2024, in

the parking lot of a commercial business located at 5027 Windsor Drive,

Stroud Township, Monroe County. The UT purchased a quantity of

cocaine from SMITH for a predetermined amount of United States

Currency.  SMITH provided the controlled substance to the UT

concealed within a blue latex style glove. SMITH introduced himself to

the UT as "Smitty" during the interaction. During the interaction the

UT asked SMITH if he had fentanyl available and SMITH related to

the UT he would have more fentanyl available in the future.

24.    The second controlled purchase made by the UT occurred on

March 20, 2024, in the parking lot of a commercial business located at 300 Shoppes Stroud, Stroud Township, Monroe County. The UT purchased a quantity of cocaine from SMITH for a predetermined amount of United States Currency. The UT also purchased a quantity of fentanyl from SMITH for an amount of United Stated Currency. SMITH provided the controlled substances to the UT concealed within a blue latex style glove. During the interaction SMITH agreed to sell the UT larger quantities of fentanyl in the near future if the UT approved of the quality fentanyl purchased.

25.     The third controlled purchase made by the UT occurred on March 26, 2024, in the parking lot of a commercial business located at 300 Shoppes Stroud, Stroud Township, Monroe County. The UT purchased a quantity of cocaine and a distribution size quantity of fentanyl from SMITH for a predetermined amount of United States Currency. SMITH provided the controlled substances to the UT concealed within a blue latex style glove. During the interactions SMITH and the UT discussed SMITH providing the UT with larger quantities of fentanyl on consignment.

26.     The fourth controlled purchase made by the UT occurred on April

13

1, 2024, in the parking lot of a commercial business located at 5027 Windsor Drive, Stroud Township, Monroe County. The UT purchased a distribution size quantity of fentanyl from SMITH for a predetermined amount of United States Currency. SMITH provided the controlled substance to the UT concealed within a blue latex style glove. During the interaction SMITH agreed to provide the UT with half the quantity obtained on consignment. An agreement was reached for the UT to send the remainder of the money owed to SMITH via Cash App once the UT had distributed some of the fentanyl. SMITH produced a cellular telephone during the interaction with the UT and provided the UT with his cash app account via QR code displayed on SMITH's cellular telephone. The screen displayed a QR code with words "Dee" and "scan to pay $kincks1621".

27.     On April 3, 2024, the UT sent text communication to 570-807-9466 relating he/she would be sending all the money owned for the consignment fentanyl to SMITH's Cash App account the following week. The UT received an incoming text message from 570-807-9466 with an emoji approving of the UT's prior message.

28.     On April 11, 2024, the UT received an incoming text

14

communication from 570-807-9466. The UT then sent United States Currency, as payment for the consignment fentanyl, to Dimitris SMITH's Cash App "$kincks1621" via a confidential Cash App account utilized by the UT. After sending the funds via Cash App, the UT placed an outgoing cellular telephone call to 570-807-9466 and had a conversation with SMITH. The UT informed SMITH he/she had sent the remaining money via Cash App. SMITH related to the UT he didn't see it yet. The UT related he/she heard SMITH manipulating something in the background and then SMITH informed the UT the money was in his Cash App account. The UT and SMITH conversed further, and an agreement was reached for the UT and SMITH to meet again in the future and for SMITH to provide the UT with a larger distribution size quantity of fentanyl. The UT was outfitted with an audio recorder and captured the telephone conversation with SMITH.

29.     During each of the 4 undercover purchases SMITH provided the UT with the controlled substances concealed within blue latex style gloves. During each of the 4 undercover purchases the UT was outfitted with audio and/or video recorders to capture the phone calls and interactions between SMITH and the UT. Each of the four undercover

purchases made by the UT occurred within the Middle District of Pennsylvania. All telephone calls and text messages between SMITH and the UT were completed with SMITH utilizing cell phone number 570-807-9466.

30.    Trooper Muzzey explained that surveillance was established on the meeting locations by members of law enforcement. SMITH was positively identified by the UT as well as investigators as the person meeting with the UT.

31.    In March of 2024, FBI sent subpoena to Verizon Wireless for subscriber information for cellular phone number 570-807-9466.  On April 3, 2024, Verizon Wireless responded indicting the cellular telephone number belongs to reseller Tracfone.

32.    In April of 2024, Trooper Muzzey explained after querying law enforcement databases and utilizing law enforcement contacts he acquired information on SMITH utilizing another cellular telephone number. Trooper Muzzey explained that cellular telephone number **484-221-7775,** was being utilized SMITH. The UT then utilized his/her Cash App account and input the target cell phone **484-221-7775** into the Cash App application. The Cash App application displayed "Dee" along with

16

"$kincks1621", which is identical to the Cash App information provided by SMITH to the UT during the fourth controlled purchase the UT made.

33.    In April of 2024, FBI sent subpoena to Verizon Wireless for subscriber information for the cellular telephone assigned number **484-221-7775**. On April 16, 2024, Verizon Wireless responded and phone number **484-221-7775** is subscribed to Dimitris SMITH.

34.    Trooper Poliskiewicz related that on April 4, 2024, he appeared before Monroe County Court of Common Pleas Judge Higgins to apply for and was granted a search warrant to obtain certain Cash App records associated with his investigation into the death of Pennell.

35.    On April 11, 2024, Trooper Poliskiewicz related he received data from Cash App reference the search warrant he served. The account records show an account was owned by SMITH and all of SMITH's biographical information was present to include his birth date and social security number. Further detailed in the records for the account was the customer token "C_0adzahyzp", display name "Dee", and alias Cashtag "kincks1621", along with cellullar telephone number **484-221-7775**. "$kincks1621" was the recipient Cash App account utilized when

17

the UT sent United States Currency to SMITH on April 11, 2024.
Furthermore, SMITH acknowledged receipt of that Cash App payment
during a recorded phone call with the UT.

36.     On Tuesday, April 23, 2024, a Grand Jury sitting in the Middle
District of Pennsylvania returned a 4-count indictment against SMITH
charging distribution of a controlled substance in violation of Title 21
U.S.C 841(a) (Doc. 1 at 3:24-CR-106). The 4-count indictment was for
conduct associated with the four (4) controlled purchases detailed
above. A Federal Arrest warrant was issued for SMITH.

37.     On Thursday, April 25, 2024, I appeared before Chief United
States Magistrate Judge Joseph Saporito, Jr to apply for and was
granted a search warrant for the contents of one cellular device
assigned cellular telephone number **484-221-7775.**

38.     On Monday, April 29, 2024, SMITH was taken into custody during
the course of a traffic stop along Interstate 80 Westbound in Monroe
County Pennsylvania. SMITH was the front seat passenger in a black
in color Jeep Grand Cherokee bearing Pennsylvania Registration
MFS3887. At the time of his arrest investigators also called a **484-221-
7775** and an Apple iPhone within the vehicle rang. The cellular device

18

was seized. SMITH is in the custody of the United States Marshal Service and is currently being housed at the Lackawanna County Correctional Facility in Scranton, Pennsylvania.

39.    Based on the facts set forth herein, I respectfully submit that there is probable cause to believe that SMITH committed violations of 21 U.S.C 841 (a)(1) Distribution of a Controlled Substance and 21 U.S.C 841(a)(1) Distribution of a Controlled Substance Resulting in Death and that his DNA is evidence of his participation in these offenses.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that a search warrant be issued authorizing the FBI to collect a DNA sample utilizing a buccal swab from the inside of SMITH'S mouth to compare to the DNA obtained from the evidentiary items seized from Pennell's residence during the course of the investigation into her death which occurred on December 11, 2023.